WULF, RESPONDENT, *v.* MANUEL, APPELLANT.

MINING CLAIM— *Title through alien— Nonsuit.* — On the trial of an action between two claimants of a mining claim upon the lands of the United States, a motion for a nonsuit was made by the defendant upon the ground that the plaintiff deraigned title through one M., an alien. The defendant's answer alleged the citizenship of M., which was admitted by plaintiff. *Held,* that the defendant was bound by his answer, and the nonsuit was properly denied.

SAME— *Aliens— Retroactive effect of naturalization.* — The defendant at the time of his purchase of the mining claim in controversy, and at the time of his application to the United States for a patent, was an alien, but was made a citizen on the day of the trial. *Held,* that under the law only citizens of the United States, and those who have declared their intentions to become such, can apply

to purchase the mineral lands of the government, and that as such lands are not open to exploration, occupation, or purchase by aliens, the defendant's act of naturalization could not retroact to his purchase or possessory right to a mining claim upon the public domain.

*Appeal from First Judicial District, Lewis and Clarke County.*

The cause was tried before BLAKE, C. J.

*McConnell & Clayberg,* for Appellant.

The appellant insists that the court erred : *First,* in nonsuiting him upon his cross-complaint. *Second,* in refusing to nonsuit the plaintiff.

After the appellant was naturalized his status was that of a citizen, and such naturalization had a retroactive effect, and became a waiver of all liability of forfeiture and a confirmation of his former title, and entitled him to a recognition in court as a naturalized citizen, the same as if he had been naturalized before the suit was commenced. (*Osterman* v. *Baldwin,* 6 Wall. 116; *Jackson* v. *Beach,* 1 Johns. Cas. 401; *Craig* v. *Radford,* 3 Wheat. 591; *Fairfax* v. *Hunter's Lessee,* 7 Cranch, 607; *State* v. *Moore,* 28 Wis. 96; *Elmondorff* v. *Carmichael,* 3 Litt. 472; 14 Am. Dec. 87, and notes; *Governeur* v. *Robertson,* 11 Wheat. 332.)

"That an alien may take by deed or device, and hold against any one but the sovereign until office found, is a familiar principle of law, which requires no citation of authorities to establish." (*Cross* v. *De Valle,* 1 Wall. 8; *Osterman* v. *Baldwin,* 6 Wall. 116; *Fairfax* v. *Hunter,* 7 Cranch, 607; *Jones* v. *McMasters,* 20 How. 8; *Phillips* v. *Moore,* 100 U. S. 208; *Craig* v. *Radford,* 3 Wheat. 594; *Territory* v. *Lee,* 2 Mont. 124; 1 Washburn on Real Property, 50.)

The Supreme Court of Montana held, in the case of *Tibbitts* v. *Ah Tong,* 4 Mont. 536, that there is a distinction between receiving a title to the possessory right of the locator of mineral lands of the United States on the part of an alien, and the receiving of the title of another character of lands by such alien. In that case it is held that the right to purchase and take a conveyance of the possessory title of the locator of mineral lands of the United States, necessarily involves the right and capacity to

purchase from the government of the United States, and inasmuch as an alien cannot purchase from the United States, he cannot therefore be the holder by deed of conveyance of the possessory title of the locator of mineral lands; and that the effect of such purchase on the part of the alien, and conveyance to him of such possessory title, is the forfeiture of the title acquired by the locator of such mineral lands.

The opinion of the majority of the court is not sustained by any authority, and it is for this court to determine whether it will adhere to the majority opinion in that case or adopt the doctrine of the dissenting opinion of Mr. Justice Galbraith. If the opinion of the majority is to be maintained, then the refusal of the court below to nonsuit the plaintiff was clearly erroneous, because his title depends upon the deed of an alien. But if it is to be held that the common-law doctrine applies to possessory titles to the mineral lands of the United States, as held in the dissenting opinion, then the court should have found that the naturalization of appellant had a retroactive effect, and was a waiver on the part of the government of any right of forfeiture of his claim to the premises in controversy upon the ground of his alienage, and he should have been permitted to have maintained his status in court, and to have set up his rights under his cross-complaint if he could.

*Kinsley & Knowles*, and *Wade, Toole & Wallace*, for Respondent.

The objection to the citizenship of Fred Manuel was not made until judgment was rendered against the defendant. The motion for a nonsuit against the plaintiff was not made until after the nonsuit against the defendant had been granted, long after plaintiff had closed his case, and even after the defendant had closed and a nonsuit and judgment had been ordered against him. Hence the motion and objection was made too late. (*Higgins v. Mahoney*, 50 Cal. 444; *Leese* v. *Sherwood*, 21 Cal. 164.) If the objection had been urged in time and the record showed that Fred Manuel was an alien, nevertheless the proof of this point would not be within the issues in this case. Its effect would be to avoid the Columbia location and abandonment. (*Tibbitts* v. *Ah Tong*, 4 Mont. 542.) Where abandon-

ment or forfeiture is asserted to defeat a location once regularly
made, the facts constituting such alleged abandonment must be
pleaded before they can be proved. (*Switzer* v. *Renshaw*, 6
Mont. 464.) None of the authorities cited by appellant on this
question have anything to do with unpatented mining claims,
or in any way militate against the decision of the court in
*Tibbitts* v. *Ah Tong, supra.* In any event the action of the
court in nonsuiting the defendant, as to his location, would be
error without injury, as the court expressly finds his grantor at
the time of his alleged location to have been a trespasser. (*Belk*
v. *Meagher*, 104 U. S. 279; *Taylor* v. *Middleton*, 67 Cal. 656.)
Fred Manuel, as an honorably discharged soldier of the army
in the late rebellion, was in the position of one who had declared
his intention to become a citizen. (Rev. Stats. U. S. § 2166.)
It is contended that the soldier is an alien until he takes his
final papers; so, too, is one not a soldier, who has declared his
intention to become a citizen. (*Malloy* v. *Duden*, 25 Fed. Rep.
673; *Orosco* v. *Gagliardo*, 22 Cal. 83; Morse on Citizenship,
p. 69.) In making the declaration an alien does not take an
oath of allegiance, but simply declares that it is *bona fide* his
intention to become a citizen, while at the time of entering the
army an enlisted soldier actually takes an oath of allegiance,
and this oath is the important step in conferring the rights of
citizenship. (Rev. Stats. U. S. §§ 1342, 1999; *Campbell* v.
*Gordon*, 6 Cranch, 182; *Starke* v. *Chesapeake Ins. Co.* 7 Cranch,
420; *Murray* v. *Charming Betsy*, 2 Cranch, 64; *Alsberry* v.
*Hawkins*, 9 Dana, 17; *Browne* v. *Dexter*, 66 Cal. 39; Morse
on Citizenship, pp. 19, 42, 43, 120, 132.)

DE WITT, J.—This action is in the ordinary form of a con-
test between two claimants of a quartz lode mining claim upon
the lands of the United States, to determine the right of defend-
ant to proceed in the United States land office for patent thereto.
On November 18, 1887, the defendant, Moses Manuel, made
application in the land office for patent for the Marshal Ney
Mining Claim. The plaintiff, Ivur Wulf, filed his adverse
claim to such application, basing his contest upon his right to
the premises by virtue of their location and possession as the
Columbia Mining Claim, whereupon the parties were remanded

to the court of competent jurisdiction (§ 2326, Rev. Stats. U. S.) for the determination of their claims. The result was this action. The plaintiff's location of the Columbia Claim was made July 1, 1882, by Henry Pflaume, who was a citizen of the United States. November 30, 1885, Pflaume conveyed to Alfred Manuel. On November 30, 1887, Alfred Manuel conveyed to Ivur Wulf, the plaintiff. Such is plaintiff's location and deraignment of title of the Columbia lode. Defendant's title is as follows: His Marshal Ney Claim was located March 15, 1885, by said Alfred Manuel, "who," in the language of defendant's answer, "was then, and now is, a citizen of the United States." (See cross-complaint in answer, paragraph 2.) This allegation is undenied, and therefore, for the purposes of this action, will be taken as true. In October, 1885, Alfred Manuel conveyed to Moses Manuel, the defendant. It is conceded by counsel on the argument that Moses Manuel was an alien until the twenty-eighth day of May, 1889, when he was made a citizen, during the progress of the trial, being entitled thereto without a preliminary declaration for reasons unnecessary here to recite. The respective claims described are in conflict as to their area. No questions are presented as to due location, or annual representation, or compliance with mining laws, rules, or regulations, or sufficiency of the conveyances. The court below nonsuited the defendant upon his cross-complaint, for the reason that at the time when the Marshal Ney Claim was conveyed to defendant, and when he made his application to the United States for patent, and the action was commenced, he was an alien. The court further refused to nonsuit the plaintiff, the defendant moving for such nonsuit on the ground that Alfred Manuel was an alien when he received title from Pflaume, and transferred the same to plaintiff. Judgment was rendered for plaintiff for the possession of the premises. A motion for a new trial was made and denied. The defendant appeals from the order denying the new trial, and from the judgment as well. Appellant relies upon two errors, which we will consider in the inverse order of their presentation.

·1. The court erred in refusing to nonsuit the plaintiff. The sole ground of the motion was that Alfred Manuel, who was a link in the chain of plaintiff's title, from November 30, 1885,

to November 30, 1887, was during that whole period an alien, and as such not competent to receive and transmit the title. The pleadings deny to this court the discussion of that proposition, although counsel in argument and brief have devoted much time thereto. The party making the motion, the defendant, has stated in his verified answer that said Fred Manuel was a citizen of the United States ever since March 15, 1885. This was admitted by the replication. Defendant could not afterwards be heard to deny and stultify his pleading by moving for a nonsuit, by which motion he was obliged to declare the falsity of his own answer. He was bound by the allegations of his answer, especially when the opposite party had accepted the truth thereof. The court as well had the right to accept such truth. Defendant's said motion for a nonsuit was properly denied. (*Mulford* v. *Estudillo*, 32 Cal. 139; *Herold* v. *Smith*, 34 Cal. 124.)

2. The only other error assigned is the action of the court in nonsuiting the defendant upon his cross-complaint. Moses Manuel, the defendant, obtained his title, if at all, by purchase in October, 1885. He applied to the United States for patent November 18, 1887. The action was commenced February 1, 1888. Defendant answered June 1, 1888. The cause was tried May 28, 1889. At all of these times the defendant was an alien, as admitted by counsel, and had not declared his intention to become a citizen of the United States. He became a citizen during the trial. This act of the defendant retroacted to all the previous events above recited. If this be the law, he should not have been nonsuited. He should have been heard upon his claim, that the right to the possession might have been declared to be in plaintiff or defendant, or neither. (21 U. S. Stats. at Large, ch. 140.) "That an alien may take by deed or devise, and hold against any one but the sovereign until office found, is a familiar principle of law, which it requires no citation of authorities to establish." (*Cross* v. *De Valle*, 1 Wall. 13.) Appellant then cites us to a line of decisions upon the question of the retroaction of the act of naturalization. These cases treat of land in its ordinary sense, and not of possessory rights to mining claims on the public domain. They all discuss grants between persons, and not the peculiar laws, rules, and regulations by which the sovereign power promises to sell its own

lands to certain described persons. These cases proceed upon the settled principle of law that an alien may take and hold land by grant until office found; and then they lay down the further rule that if the alien so holding become a citizen before office found, that the act of naturalization in the cases before the courts retroacts to the original acquirement of title. The cases referred to are *Osterman* v. *Baldwin*, 6 Wall. 122; *Jackson* v. *Beach*, 1 Johns. Cas. 401; *Craig* v. *Radford*, 3 Wheat. 594; *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 607; *Governeur* v. *Robertson*, 11 Wheat. 332. But in the case at bar we encounter a class of real estate *sui generis*, viz., possessory rights to mining claims on the public domain of the United States, which rights are endowed with the qualities of real estate to a high degree. The land belongs to the United States. But the government says that it will sell this class of its lands to citizens of the United States, and to those who have declared their intention to become such, and to them only, and only to them when they have complied with certain laws of the United States and local mining rules and regulations as to the location and possession of such claims. No other persons may apply to purchase from the United States. The mineral lands of the government are not open to exploration, occupation, or purchase by aliens. An alien may not even take or hold real estate of this class any more than he may take or hold any real estate by descent. In descent, it is the rule of law, and not the act of the party that vests title in the heir. As to descent to an alien, the law says that it would be an idle thing to vest title in the alien by one act of law and then take it from him by another, viz., office found. (See *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 619.) So in conferring title to mining claims, and the possessory rights thereto. Such title and possessory rights are given only to the class of persons designated by the law, and by virtue of that law, and in the manner prescribed thereby. It would therefore be incongruous to hold that an alien could take and hold, until office found, these claims, by the provisions of the law which says that its benefits are extended only to citizens and those who have declared their intention to become such, and, after he had so taken and held them, resort to office found to deprive him of them. The parallel of the alien heir claiming

by descent, and the alien miner claiming under the mining laws, seems to be complete as to the principle on due consideration. To the alien is given no right to explore, purchase, or occupy mineral lands. This being his situation as an alien, without even the right to take or hold until office found, as he may other real estate, then, when he becomes a citizen, there is nothing, no previous taking or holding, or the right thereto, to which his subsequent naturalization can retroact. We are therefore of opinion that Moses Manuel, as an alien when the action was commenced, and when the title came to him, as he claims, could not be heard in court to assert his claim to the possessory right to the mining claim in controversy, and that his subsequent naturalization could not retroact as he urges. As to the proposition last discussed, see *Tibbitts* v. *Ah Tong*, 4 Mont. 536. Respondent has presented some objections to the record on the appeal. The views above expressed render a consideration of those objections unnecessary. The order of the District Court denying the new trial, and also the judgment, are affirmed.

HARWOOD, J., concurs.

BLAKE, C. J., was trial judge in the lower court, and did not sit in the case on appeal.